**TEXLITE, INC., Appellant,**

v.

**H. H. WINEBURGH, Appellee.**

No. 16235.

Court of Civil Appeals of Texas.

Dallas.

Oct. 4, 1963.

Rehearing Denied Nov. 8, 1963.

R. Dean Moorhead, Austin, Ivan Irwin, Sr., Strasburger, Price, Kelton, Miller & Martin, and Hobert Price, Dallas, for appellant.

Wm. Andress, Jr., Dallas, for appellee.

BATEMAN, Justice.

Appellee sued for salary alleged to be due him as Executive Vice-President of appellant. A non-jury trial resulted in judgment for appellee, which we find to be without support in the evidence and which must therefore be reversed.

The essential facts are undisputed. Appellee and other members of his family owned practically all of the stock in the appellant corporation. He was president and a member of its board of directors. Prior to December 9, 1959 he and his family sold all their stock, and on that date a meeting of the board of directors was held at which all of the officers and directors resigned and were replaced by nominees of the new owners, except the appellee, who resigned as President but remained a director; and at the same meeting he was elected Executive Vice-President at a salary of $1500.00 per month. The new owners of the corporate stock did not cause the same to be reissued either to them or their nominees until after April 5, 1960. At a special meeting of shareholders on February 27, 1960 appellee was removed as director and the board was directed to abolish the office of Executive Vice-President and dismiss appellee as such officer. On the same date the directors met and voted to abolish the office of Executive Vice-President and authorized the president to inform appellee of his dismissal as an officer and an employee of the company effective March 1, 1960. Appellee's salary was paid through February 1960.

Appellant's bylaws provide for election of the directors by the shareholders and specifically provides: "Said Directors shall be elected each year at the annual meeting of the stockholders, to hold office until the next annual meeting or until the election of their successors."

Another provision of the bylaws was: "The Board of Directors shall, as soon after their annual election as conveniently may be, elect from their number a President, and Vice-President, who shall hold this office until the next annual meeting, and until others are chosen and qualify in their stead. The Board shall also annually elect a Secretary and Treasurer (or one person to serve as both Secretary and Treasurer) who need not be members of the Board, and such other officers, agents and factors as they may deem necessary, who shall hold office until others are chosen and qualify in their stead, subject to removal by the Board at any time, with or without cause."

Appellee had no notice of, and did not attend, either of the meetings of February 27, 1960.

At a special meeting of the board of directors on May 12, 1960 Frank Cain was elected a director "to fill the vacancy established by the dismissal of H. H. Wineburgh."

Appellee sued for salary alleged to be due him as Executive Vice-President for the period from March 1, 1960 to the date of trial, together with a reasonable attorney's fee under Art. 2226, Vernon's Ann.Tex. Civ.St. There was neither pleading nor proof by either party that appellee either did or did not perform any services for the corporation after February 29, 1960; or that he did or did not offer to do so; or that he was or was not ready, able or willing to do so.

■ Appellee filed a motion in this court to strike from the transcript his motion for summary judgment in the trial court, the appellant's answer thereto, the affidavits attached to the motion for summary judgment and the answer thereto and the order overruling the motion for summary judgment. The motion to strike is in our opinion well taken and is sustained. The objectionable matter was not introduced in evidence on the trial of the case on its merits and none of it has been considered by us in reaching the conclusions herein made.

Appellant's first contention, embodied in its first seventeen points of error on appeal, briefly stated, is that there was no basis for the judgment for salary for any period after February 29, 1960 because appellee had been dismissed as Executive Vice-President and the office abolished, effective March 1, 1960. This contention is sustained.

In his brief appellee concedes that appellant had the right and power to oust him from his office and to abolish the office, but says that neither of these was accomplished because: (a) the acts of the shareholders in question were beyond the scope of the call of the special meeting, (b) the secretary of the corporation did not find a quorum present and did not certify that notice of the meeting was sent to all shareholders of record, and (c) even "if everything had been regular, there was no power in the shareholders to remove Wineburgh as a director." He argues that since the stock he sold had not been transferred on the books of the company, he was still a shareholder "of record" and entitled to notice of the meeting of shareholders; also that, since his removal as a director at an illegal meeting of shareholders was ineffectual, the board meeting was likewise illegal for lack of notice to him, hence his dismissal as an officer and the abolition of his office were likewise ineffectual.

■■ These arguments are in our opinion without merit. It is undisputed, and

appellee states in his brief, that on February 27, 1960, when these meetings were held, he owned no stock in the corporation. That being true, we hold that he has no right to complain of any of these apparent irregularities. The provision in the bylaws limiting the right to vote to those "who appear as stockholders upon the records of the company," and the statutory provisions for notice of meetings and for the preparation of a voting list prior to meetings (Arts. 2.25 and 2.27, Business Corporation Act, V.A.T.S.) are all for the benefit of the corporation. They do not afford to one not a shareholder a right to complain of lack of notice of a meeting, or of the absence of a quorum. or of action taken by the shareholders not within the purview of the call of the meeting. Camp v. Shannon, 162 Tex. 515, 348 S.W.2d 517; 5 Fletcher Cyclopedia Corporations, Secs. 2005, 2007, 2011.

■ Art. 2.32 of the Texas Business Corporation Act provides that, unless removed in accordance with the bylaws, each director shall hold office for the term for which he was elected and until his successor shall have been elected and qualified. At common law, it is said, a majority of the shareholders cannot remove a director without cause. 3 Hildebrand Texas Corporations, p. 124. But this is not to say that all of the stockholders, acting in unison, cannot lawfully remove a director, *who is not a shareholder*, at any time, with or without cause. We do not mean to announce one rule applicable to a majority of shareholders and another rule applicable where the decision is unanimous; it is simply a matter of determining who has the right to complain of such action. If a director be removed by a majority of the shareholders without cause, those of the minority have a right to object on the ground that such action breaches the understanding among shareholders, implicit in the organization of the corporation under the statute, that the directors elected shall remain in office. for the term, etc. to represent *all* the shareholders in managing the affairs of the

company. But can the removed director be heard to complain, when it appears that he is neither shareholder in nor creditor of the corporation? We think not, and hold that under the facts of this case appellee had no right to complain of his removal as a director and that such removal was therefore effective.

Not being a director, then, it was not necessary to notify him of the directors' meeting at which he was dismissed. 2 Fletcher Cyclopedia Corporations, Sec. 413, p. 265; Anderson Carriage Co. v. Pungs, 127 Mich. 543, 86 N.W. 1040; Badger Oil & Gas Co. v. Preston, 49 Okl. 270, 152 P. 383.

Appellee does not question the *power* of the directors to remove him. He could not very well do so in the face of the bylaw which gave the board the authority to remove officers and agents "at any time, with or without cause," and Art. 2.43 of the Business Corporation Act, giving the board that authority "whenever in its judgment the best interests of the corporation will be served thereby." Being no longer financially interested in the corporation, and having no vested interest in the office of Executive Vice-President, he cannot be allowed thus to thwart the legitimate desires and purposes of the corporation.

Moreover, it is quite obvious from this record that the acts of the shareholders in removing appellee as a director and directing his dismissal, were ratified by the corporation by consistently refusing to recognize appellee as an officer or director and refusing to pay him his salary, and also by electing his successor on the board of directors at the meeting of May 12, 1960. 14 Tex.Jur.2d 451, et seq.; Hall v. Crawford & Delphenis Co., Tex.Civ.App., 11 S.W.2d 804, err. dism.; 5 Fletcher Cyclopedia Corporations, Sec. 2011.

Appellee also argues that appellant's defense based upon the abolition of the office for which the salary is claimed, being in confession and avoidance, cannot be raised under a general denial but must be specially pled under Rule 94, Vernon's Texas Rules of Civil Procedure. We agree with this as an abstract statement of law, but the record in this case shows that appellee waived this objection and consented to the trial of the issue of the efficacy *vel non* of his dismissal. When appellant's counsel first stated to the court that he wished to introduce these minutes in evidence counsel for appellee warned the trial judge that he was going to object to the minutes when offered on the ground that there were no pleadings to support it, that they could not properly be offered under a general denial, that this was a matter of confession and avoidance which has to be specially pleaded under Rule 94. The court stated that he would overrule that objection and would admit both the waivers and the minutes of the shareholders' and directors' meetings. Counsel for appellee then stated that he wanted to make the further objection that the minutes were not "properly proven". The court sustained that objection; whereupon counsel for appellant introduced testimony identifying the minute books, the waivers and the minutes in question; and in the course of his cross-examination of this witness counsel for appellee himself offered in evidence "the entire minute books, both the stockholders and the directors and the bylaws of the corporation." No objection being voiced by counsel for appellant, the minute books and bylaws were admitted in evidence, including the minutes of the meetings of February 27, 1960. Therefore, in view of this evidence and the record as a whole, we hold that the issue as to whether appellant successfully avoided further liability to appellee by the actions taken at those meetings was tried by consent even though not properly raised by appellant's pleadings, Thomas v. Linder, Tex.Civ.App., 231 S.W. 2d 891, err. ref.; Rule 67, Vernon's Texas R.C.P.

Appellant's second contention, embodied in its eighteenth, nineteenth and twentieth points of error, is that if appellee is entitled

to recover at all his recovery must be limited to salary for one year following either his election to the office of Executive Vice-President or his discharge, because any recovery beyond that period was "barred by the Statute of Frauds." The reference, of course, is to Art. 3995, V.A.T.S., which provides, *inter alia,* that no action shall be brought upon any agreement which is not to be performed within the space of one year from the making thereof unless the agreement or some memorandum thereof shall be in writing and signed by the party to be charged therewith.

 This position is overruled because: (1) this is not an action on an agreement, and appellee states in his brief that he "has never claimed any contract rights"; and (2) if this were a suit or an oral employment contract not to be performed within the space of one year, the statute would prohibit *any* recovery, not just for the period after the expiration of one year. In other words, the statute of frauds does not operate like a statute of limitation under which a part of a debt sued for might be barred and another part not barred.

 The judgment appealed from includes $5,000 as attorney's fee, and appellant's twenty-first point assails this as error. Appellee says he is entitled to such a fee under Art. 2226, V.A.T.S., because the salary sued for is "payable for the performance and availability of the skilled personal services contemplated." Art. 2226 authorizes a recovery of a reasonable attorney's fee by a person having a valid claim for "personal services rendered." This statute is penal in character and must be strictly construed. Van Zandt v. Fort Worth Press, Tex., 359 S.W.2d 893; Burke v. Merrill Lynch, Pierce, Fenner & Smith, Inc., Tex. Civ.App., 363 S.W.2d 392, no writ. hist.; Panhandle Broadcasting Co. v. Cercy, Tex. Civ.App., 363 S.W.2d 792, no writ. hist. Such a construction would not permit us to say that the statute covers a suit for services not rendered but made available and which were "contemplated". The record is

silent on the question of whether appellee actually rendered any services to appellant after March 1, 1960. Appellee does not even allege that he did. The burden was on him to plead and prove that he did so. Having failed to meet that burden, he was not entitled to recover any attorney's fee under Art. 2226. Appellant's said last point is sustained.

For the reasons hereinabove set forth the judgment is reversed and, as the case seems to have been fully developed, it is here rendered for appellant.

Reversed and rendered.

## ON MOTION FOR REHEARING

Appellee challenges our holding that he waived his objection that the defense of abolition of the office, being in confession and avoidance, could not be raised under a general denial but must be specially pled under Rule 94, and consented to the trial of this issue by himself offering in evidence all of the minute books of the meetings of stockholders and directors as well as the by-laws of the appellant. He states that we have mis-stated the record. In view of this assertion, we have again carefully reviewed the statement of facts and have concluded that we were correct in our original opinion.

In the course of the attorneys' preliminary statements to the court concerning their respective positions in the case, counsel for appellant stated that he would offer in evidence the waiver of notice and the minutes of a special meeting of stockholders of the defendant corporation held on February 27, 1960; whereupon counsel for appellee asked for what purpose this was offered, to which counsel for appellant replied: "Showing the action of the stockholders in connection with the abolishment of the position of executive vice-president" (S.F. 7, Lines 2–6), whereupon counsel for appellee stated: "We are going to object to it, Judge, on the ground that there are no pleadings to support it; it cannot be offered under a general denial. This is a matter of confession and avoidance which

has to be specially pleaded under Rule 94." (S.F. 7, Lines 7–11).

Appellant then stated further that it was their position that the office of executive vice-president had been abolished by the stockholders and appellee dismissed and discharged as an employee (S.F. 7, Lines 20–24) and appellee, after pointing out that there was no statutory authority for the stockholders to so terminate the office, continued to object that "if they wanted to show under a general denial that he wasn't elected and so on, they can't show that they subsequently terminated the office because that is an affirmative defense, which has to be pleaded specifically under Rule 94". (S. F. 8, Lines 11–15).

Appellant further offered the waiver by the directors of the special meeting held on the same day, and the minutes, to which the same objection was made. (S.F. 8, Lines 16–21).

The court then said:

"Let me back up a little bit and look at Mr. Andress' objections. All right, I will overrule the objection and I will admit both the waiver and the minutes of the meeting of the stockholders and the waiver and minutes of the directors meeting." (S.F. 9, Lines 19–23).

Appellee then made the further objection that the minutes were not properly proven, which the court promptly sustained (S.F. 10, Lines 5–7), and in order to meet that objection the appellant produced Frank Cain as a witness, who identified the minute books as having been in his possession and appellant's counsel offered the same minutes and some additional ones, which the court had identified (S.F., Lines 11–12) and when appellee again objected that they were still not properly proven, because it was not shown who Frank Cain was (S.F. 13, Lines 19–24), the court required further proof, finally practically proving them up himself, and the following then took place:

"Mr. Andress: We will still object to the introduction of these minutes, Your Honor, because they are not properly proven.

"The Court: I will overrule it, I will admit them.

"Mr. Andress: All right, without waiving that I will take the witness on cross examination." (S.F. 16, Lines 8–13).

Then the court recognized that the minutes of the stockholders and directors meetings of February 27, the only ones affecting the abolition of the office, were already in evidence (S.F. 25, Line 14; S.F. 33, Lines 11, 20).

Appellee then offered in evidence the minutes of December 9, 1959, (S.F. 33, Line 23) which had nothing to do with the abolition of the office, but were the minutes of the meeting at which the appellee was admittedly elected to the office with its appurtenant salary of $1,500 per month (S.F. 5, Lines 14–24).

Then after considerable direct, cross, re-direct and recross examination of the witness Cain, none of which is material to the question now under consideration, the court said: "Is there any objection to all of the by-laws of the corporation being considered in evidence, you offered some and Mr. Irwin offered some sections?" (S.F. 40, Lines 2–4). To this counsel for appellee replied: "Judge, I was just about to offer the entire minute books, both the stockholders and directors, and the by-laws of the corporation." (S.F. 40, Lines 5–7). The court then asked appellant's counsel if he had any objection, and when counsel said he had none the court said: "All right, that might be preferable."

It is obvious from the above that the only reasonable interpretation that can be given to the record at this point is that this was an offer without reservation or limitation of all of the stockholders and directors minute books and the by-laws of the corporation. It is obvious that the trial court interpreted what was said as an unqualified tender of those records, and it is obvious

to us that the court's statement, "All right, that might be preferable," meant that he was admitting all of the minute books and all of the by-laws as offered by appellee's counsel. We so hold.

It will be observed that after first objecting to the introduction by appellant of the minutes of the two meetings of February 27, 1960 on the grounds that appellant had not pled specifically in confession and avoidance, the last two times appellee objected it was only on the ground that the minutes were not properly proven. This in itself tends to show at least tentative abandonment of the objection based on the absence of pleadings, and then when at last counsel for appellee himself unreservedly introduced in evidence all of the minute books, which necessarily included the minutes of the two meetings of February 27, 1960, it was quite obvious that he had abandoned that position and tacitly consented to the trial of the issue as if it had been properly pled.

Counsel for appellee now takes the position in his motion for rehearing that he did not thereby offer the minutes of the meetings of February 27, 1960, that they had already been admitted in evidence over his objections, and that all he really introduced were "the remainder of the minute books and of the by-laws, to put in context those minutes which had already been admitted and were a portion of the record over objection," but the contrary is shown by the record of what he actually said, as above demonstrated.

The technical aspect of appellee's position is further demonstrated by the following, which is quoted from the statement of facts beginning on Page 47 at Line 16:

"The Court: What does the evidence show with reference to Mr. Wineburgh being a stockholder at the time this meeting was called, that is the stockholders, was held?

"Mr. Andress: Here is the situation, Judge. He was a stockholder of rec-

ord. The stock certificates issued to him and the members of his family were still outstanding. He had endorsed those and delivered them to Monte Irion, according to Frank Cain. But they had never been canceled on the books of the corporation, and no new stock certificates had ever issued. And accordingly, under Article 1, Section 1 of those by-laws, he and the members of his family were still the stockholders of record.

"The Court: He was still a stockholder of the company?

"Mr. Andress: Yes, sir. And at some time after the 5th of April, 1960, they issued this stock."

Counsel for appellee made it perfectly clear at the trial that at the time of his dismissal he owned no stock and no beneficial interest in the corporation whatsoever. He also makes this perfectly clear in his brief filed in this court wherein he says:

"Let it be clearly understood that the appellee and his family did not claim any beneficial stockholding interest in the corporation at the time of this purported stockholders meeting. They had signed all of their stock certificates and delivered the stock to Mr. Irion, who in turn delivered it to one Mr. Stevens (S.F. 20), who was identified by Mr. Cain as the chief stockholder of Republic-Odin Corporation which owned Texlite (S.F. 29). The Wineburghs, therefore, had parted with their beneficial interest, but the transferees had not qualified as stockholders entitled to vote at a stockholders meeting."

This statement by appellee and the record as a whole show that there was no real dispute in the facts, which makes the case equivalent to one tried on an agreed statement of facts. It was held in Banker v. Jefferson County Water Control & I. Dist., Tex.Civ.App., 277 S.W.2d 130, 135, err. ref. n. r. e., that in such a case the pleadings of

the parties "are not of material consequence."

The purpose of pleadings being to apprise the opposing party of one's position in a case, and the positions of both parties having been fully stated orally to the court at the beginning of the trial, and no objection being made until the corporate minutes in question were offered in evidence, it seems quite clear to us that under the circumstances the objection lacked substance and, even if meritorious when made, was waived.

In his second assignment of error in his motion for rehearing in this court appellee says we erred in holding that appellee had been removed as a director, making it unnecessary for him to be notified of the meeting of directors, because the point was neither raised nor briefed by appellant. This contention is overruled. Appellee did not sue for the value of his services as a director and his removal as a director was not an ultimate fact to be proven. He sued for salary as an officer or employee, and the ultimate issue was whether he had been successfully removed as an officer and employee. He says that he was not legally removed as an officer and employee by the Board of Directors because he, a member of the Board, was not notified of the meeting and was not present. Purely as an evidentiary matter it was shown that he was not a director, and hence not entitled to notice of the directors meeting, because he had previously been properly and legally removed by the stockholders as a member of the board of directors. It was not necessary for this evidentiary consideration to be raised as a separate point in the brief.

Appellee insists there were numerous other errors committed in our disposition of the case, and after carefully considering all of them we find they are without merit and are overruled.

Appellee also asks us under Rule 455, T.R.C.P., to make certain additional findings of facts. We have carefully considered each

of the matters upon which we are requested to make additional findings and, feeling that they are either immaterial or undisputed, we overrule the request.

The motion for rehearing is overruled.